UNITED STATES, Appellee

v

DAVID ALFRED PRICE, Ship's Serviceman Third Class, U. S. Navy, Appellant

7 USCMA 590, 23 CMR 54

No. 8926

Decided February 15, 1957

*Major R. D. Humphreys,* USMC, argued the cause for Appellant, Accused.

*Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Edmund Burke, Jr.,* USN.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused, Ship's Serviceman Third Class David Alfred Price, was tried and convicted of violating, respectively, Articles 107, 108, and 121 of the Uniform Code of Military Justice, 10 USC §§ 907, 908, and 921. He was sentenced to a bad-conduct discharge, total forfeitures, reduction to seaman recruit, and confinement at hard labor for three years. The convening authority approved the penalties, except the confinement, which he reduced to one year. The board of review reduced the period of confinement to eight months but otherwise approved.

A hearing was granted to consider whether the law officer erred when at the trial he refused to grant the defense counsel permission to examine a witness—who had obtained a pretrial statement from the accused—with respect to the witness' compliance with the provisions of Article 31(b), Uniform Code of Military Justice, 10 USC § 831.

The accused was in charge of a Cabin Class Exchange Store aboard a naval vessel. A cache of "sea store" cigarettes was discovered on board which lead to an inventory of the ship's stores. The inventory led to a shortage which in turn led to the accused. The investigating officer was called as a witness at the trial. He testified that he had advised the accused of his rights under Article 31 of the Code. This did not satisfy the defense who objected to the testimony and requested permission to examine the witness with respect to the Article 31 warning. The law officer, relying on paragraph 140a, Manual for Courts-Martial, United States, 1951, page 248, overruled the objection and permitted the witness to testify that the accused had answered "no" to a question from the investigator as to whether or not he had in his possession cigarettes obtained from the bulk storeroom other than those intended for sale in the Cabin Class Exchange.

There exists no doubt from the record but what the accused was suspect and fell within the provisions of Article 31(b) at the time the statement was obtained from him. The Government argues that Article 31 does not apply by reason of the fact that it is limited by paragraph 140a at page 252 of the Manual for Courts-Martial, supra, which provides:

"In a prosecution for an offense in which the making of a false statement is an element (for example, perjury or making a false official statement), the fact that the accused had not been warned of his right against self-incrimination before he made the statement is not a ground for excluding evidence that the statement was made by him, even though, under the circumstances, such a preliminary warning may have been required by Article 31b or by some other provision of law."

We are faced then with the question of whether a statement obtained in violation of Article 31(b) and objected to on a basis of Article 31(d) is nevertheless admissible because it is being offered in proof of a violation of a certain type of crime referred to in paragraph 140a of the Manual for Courts-Martial, supra. If it is admissible, irrespective of Article 31, it would seem that the law officer's ruling was correct. But if Article 31 means what it says, he erred. We think it means what it says.

The difficulty here results from the language employed by paragraph 140a of the Manual which appears to limit the application of Article 31 by excepting certain types of cases from its operation. There is no correlation between the protections of Article 31 and

**592**

making a false official statement. Insofar as we can determine there are no Article 107 exceptions to Article 31. If a person is a suspect or one accused, he must be warned in accordance with Article 31(b) before he can be questioned. The fact that the statement or answer requested is an official statement within the meaning of Article 107 does not restrict the protections of Article 31. We need not determine here whether the statement is an official statement in view of our determination that Article 31 is relevant to *all* pretrial statements obtained in violation of its terms. When the Manual conflicts with the Code, the Code prevails, e.g., United States. v Eggers, 3 .USCMA 191, 11 CMR 191; United States v Greer, 3 USCMA 576, 13 CMR 132; See United States v Clark, 1 USCMA 201, 2 CMR 107.

We can find no merit in the contention that although the accused was ▮▮▮ ▮ asked questions he was not directed to give answers and hence the statements were voluntary. Article 31 is, on its face more than a prohibition against involuntarily-obtained evidence. As we observed in United States v Williams 2 USCMA 430, 9 CMR 60:

". . . In every military confession, there must be two inquiries. First, was the accused properly warned, and second, was the confession obtained as a result of coercion, unlawful influence, or unlawful inducement? The confession must be excluded from evidence, according to the plain language of Article 31(d), if *either* of those proscriptions is violated:

'No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, .or unlawful inducement shall be received in evidence against him in a trial by court-martial.'" [Emphasis supplied.]

That the accused was prejudiced here by his statement is self-evident. It was used as a basis for a separate charge against him.

Accordingly, the conviction as to Charge I, and the specification thereunder, is reversed. The record is remanded to The Judge Advocate General of the Navy for return to the convening authority for a rehearing or referral to a board of review for a reconsideration of the sentence as to the other charges and specifications.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I need not decide whether the portion of paragraph 140a of the Manual which is condemned by the majority deserves such treatment. In my book, this case simply does not present a question which is primarily dependent upon an interpretation of Article 31(b) of the Code, 10 USC § 831; rather, this issue is whether the law officer improperly restricted cross-examination by defense counsel. I turn to the record to show why that is so.

At trial, the prosecution presented Lieutenant Richard D. Minnigan as a witness to testify regarding the interrogation of the accused. Lieutenant Minnigan had been appointed to investigate the circumstances surrounding the discovery of the cache of cigarettes involved in the alleged theft. The Lieutenant testified that he had interrogated the accused during the course of his investigation and that he had "warned" the accused prior to eliciting any testimony from him. No other facts or circumstances surrounding the giving of the statement, or any explanation of the sort of warning which was given is shown by the record, for after the Lieutenant made that statement, defense counsel objected, saying, "I would like to examine the witness on voir dire as to how the accused Price was warned under Article 31, and the reason for it at this [time?] is that I presume that there are going to be certain revelations." The law officer overruled this objection on the ground that it was premature. Defense counsel repeated his objection, saying that he wanted to show that any statement made by the accused to Minnigan at that time was involuntary, All of this time trial counsel was opposing the ob-

**593**

jection on the ground that such an inquiry would be irrelevant.

I have long been of the opinion that the question of whether a warning was given under Article 31 is ▮▮ a question which may be independent of any problem of involuntariness. United States v Gibson, 3 USCMA 746, 14 CMR 164; United States v Josey, 3 USCMA 767, 14 CMR 185. However, there may be occasions when other factors, combined with failure to warn, add up to involuntariness. Certainly a failure to warn may aggravate any unlawful inducement or unlawful influence offered or exercised by one of higher rank. In the case at bar, I am not sure just what counsel may have intended to bring out by his cross-examination, for he was denied his right to probe into the surrounding details. He may have been seeking to explore the question of warning to ascertain if it was coupled with other grounds of involuntariness, or he may have sought to develop other possible violations of Article 31 which would render the accused's statement to the Lieutenant inadmissible. Thus, even, if it be supposed, as the record now shows, that some warning had been given, defense counsel should, on cross-examination, be entitled to explore that area and all other matters touching on admissibility.

It only remains to be said that the law officer was in error in concluding that the objection was premature. ▮▮ ture. I know of no more appropriate time for counsel to make this sort of objection than the time chosen here. Certainly the law officer should know that the time for trial counsel to lay the foundation for the admission of evidence, or for defense counsel to destroy the base for its consideration by the court-martial, is prior to the time when it is admitted. It is much better if the testimony is not admitted than it is to have it before the court and then have it stricken subsequently. Once inadmissible evidence is presented to the court members, the accused is unnecessarily saddled with a burden, for there is a risk that its effect will not be entirely erased from the minds of those who should not have become familiar with it in the first instance.

In United States v Hawkins, 6 USCMA 135, 19 CMR 261, we had occasion to hold that a law ▮▮ officer's ruling which improperly restricts defense counsel's cross-examination in a material area, or on a substantial issue at the trial, must be viewed as an error which materially prejudices the rights of the accused. In that case, the restricted area concerned the identity of a police informer; here the restricted area concerns the admissibility of substantial and damaging evidence against the accused. In both situations, our conclusion must be the same; the accused was materially prejudiced by the erroneous restriction of cross-examination.