UNITED STATES, Appellee,

v.

Private (E-1) Raymond E. POOLE, SSN 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, United States Army, Appellant.

CM 441723.

U. S. Army Court of Military Review.

23 March 1983.

Captain William T. Wilson, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr, JAGC, and Captain David M. England, JAGC.

Captain David A. Brown, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel John T. Edwards, JAGC, and Major Rexford T. Bragaw III, JAGC.

Before FULTON, CLAUSE and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

The appellant, Private Poole, was tried by a general court-martial on charges including perjury in violation of Article 131 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 931 (1976), in that he:

> [H]aving taken a lawful oath in an Article 32 Investigation in the case of the *United States v. Houck* that he would testify truly, did ... willfully, corruptly, and contrary to such oath, testify in substance that he did not go to the 1–2–3 Club on the night of 7 March 1981, and that he did not assault Private E–1 Michael W. Payton during a robbery attempt that night, [and] that he was in his room asleep at the time, which testimony was upon a material matter and which he did not then believe to be true.

Although he pleaded not guilty, he was convicted of this charge. In addition, on his pleas of guilty, he was convicted of the mentioned assault on Private Payton (in violation of Article 128, UCMJ, 10 U.S.C. § 928 (1976) and false swearing (in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1976)) having to do with a statement to the military police that he had not been at the 1–2–3 Club on the evening in question. His approved sentence includes confinement at hard labor for 12 months (confinement in excess of 9 months was suspended and has been remitted), forfeiture of all pay and allowances, and separation from the Army with a bad-conduct discharge.

Poole unsuccessfully moved at his trial to suppress his testimony at the Article 32 (UCMJ, 10 U.S.C. § 832 (1976)) investigation on the ground that he was or reasonably should have been suspected of an offense before the testimony was given, yet was not warned of his rights against self-incrimination as required by Article 31(b), UCMJ, 10 U.S.C. § 831(b) (1976). The propriety of the military judge's failure to exclude Poole's perjurious testimony from evidence is the sole question before us.

Military police reports among the allied papers accompanying this record of trial reveal that the case arose from two sets of assaults that occurred at Fort Sill, Oklahoma, on Saturday night, 7 March 1981. First, Privates Payton and Lyons were assaulted by four males, whom they did not know, outside an enlisted members' club named the 1–2–3 Club. Two of the four assailants cornered Payton and, while one held him in a hammerlock (Poole's plea admits it was he), the other beat and kicked him, tore his trouser pockets, and took his wallet. Shortly thereafter, at another location on the post, two other soldiers were attacked by a similar group. Their assailants attempted to drive off in an automobile, but it became mired in mud and they escaped on foot. Investigation soon disclosed that the automobile belonged to Poole's friend, Private First Class (PFC) Houck.

The military police located Houck at Poole's barracks and took him to the military police station. While Houck was at the station, he was observed by both Payton and Lyons, who identified him as one of their assailants; in particular, the one who had held Payton.

Houck contended that someone had used his automobile without his permission and that he had been in Poole's barracks room throughout the entire evening until the military police had come to get him. This caused the investigators to focus on Poole and others who might attest to Houck's whereabouts.

Houck's version was supported by an entry in the barracks visitors' log and statements of the charge-of-quarters (CQ) and his messenger. More pertinently, it was supported by two statements taken from Poole. In the first of these statements, Poole said briefly that Houck had spent the evening in his (Poole's) room. In reply to a question, Poole asserted that he (Poole) had not been at or near the 1–2–3 Club on the night in question. (That is the statement involved in the charge of false swearing, to which he ultimately pleaded guilty.) The second statement, made several days later, was more detailed, but equally exculpatory, containing a denial that he (Poole) assault-

ed or attempted to rob Payton, or that he knew who had done so.

On the other hand, the investigation also produced statements by two sergeants who had escorted Poole to the military police station in response to the initial request that he be brought there for interview. Both sergeants said that Poole told them the reason he was being called in for questioning was because he had intervened on Houck's behalf in a fight between Houck and two trainees near the 1–2–3 Club during the weekend.

When charges were preferred against Houck, and a Captain Maffett was appointed to conduct the Article 32 investigation, Poole's written statements were among the papers made available to the investigating officer. These included forms showing that he was advised before questioning that he was suspected, variously, of assault or attempted robbery, and, later, false swearing. Also in the file were the statements of the two sergeants, mentioned above.

A judge advocate, Captain Sigley, participated in the investigation as a "government representative." We do not know whether Captain Sigley thereafter participated as a trial counsel in proceedings against Houck, or indeed whether there were any further proceedings involving Houck, but Captain Sigley was the trial counsel in Poole's case now before us. In any event, it appears to us that his role in the Article 32 investigation was prosecutorial rather than that of an assistant or counsel for the investigating officer. *See generally, United States v. Payne,* 3 M.J. 354 (C.M.A.1977).

Before Poole was called to the witness stand in the Houck Article 32 investigation, the victims (Payton and Lyons), a criminal investigation (CID) agent, and the CQ messenger testified. None of the testimony mentioned, much less implicated, Poole. In fact, when it developed that Payton could identify the accused Houck only as one of the several men present outside the club, rather than specifically as one who had attacked him, Houck's defense counsel asked Payton if, while waiting to testify, he had recognized anyone in the witnesses'

waiting area or met a "Private Poole." Payton answered no.

When Poole was called to testify, the investigating officer began the questioning by asking him to narrate the events of 7 March from about 1700 hours until 0100 the next day. Poole did so briefly, in a manner consistent with his previous statements. Cross-examination by Houck's defense counsel, re-direct examination by the investigating officer, and re-cross-examination produced further detail. Then, the re-cross-examination was ended with the defense counsel's question whether Poole had not in fact admitted to the two sergeants that he and Houck had been involved in a fight at the 1–2–3 Club. Poole's answer was that he had told the sergeants only that the MP's alleged that he and Houck were involved. He denied saying that they in fact were involved in a fight.

At this point, Captain Sigley, the government representative, undertook to question Poole, as follows:

Q. So your [i.e., you're] saying that you did not go to the 1,2,3 club and you did not get into a fight with any trainees?

A. Yes, sir.

Q. Do you know Private Payton?

A. No, sir.

Q. Have you ever seen him before?

A. No, sir.

Q. You did not go to the 1,2,3 club that night?

A. No, sir.

Those answers were given by Poole without advice as to any accusation against him, advice as to his right to silence, and advice as to the possible use of the answers against him. It is this colloquy and the lack of warnings that gives rise to the issues in this case.

Later in the Article 32 investigation, Payton was recalled as a witness and testified as to having observed Poole in the waiting room and recognized him as the one who had held him in a hammerlock at the 1–2–3 Club on 7 March while someone else beat

and kicked him and took his wallet. Poole was then recalled as a witness, we suppose at the request of the government representative, who this time advised Poole he was suspected of false swearing, perjury, attempted robbery, and assault, and told him he had the right to remain silent. Poole's reply, if any, to the warning is not recorded, but, in any event, he responded to questions and gave the perjurious testimony recited in the specification quoted previously.

In view of the ultimate conclusion we reach in this case, which is that there was no violation of Article 31(b), we need not decide whether, when a statement is taken in violation of Article 31(b), it is inadmissible in a subsequent prosecution grounded on the falsity of the statements rather than for an offense related to the information contained in the statement. The Court of Military Appeals held as much in *United States v. Price,* 7 U.S.C.M.A. 590, 23 C.M.R. 54 (1957). This ruling subsequently was reflected in paragraph 140*a* (6) of the Manual for Courts-Martial, United States, 1969 (Revised edition), and was intended to be preserved in Military Rule of Evidence 304(a). *See* Mil.R.Evid. 304(b); Manual for Courts-Martial, United States, 1969 (Rev.), Change 5, App. 18 at p. A18–19 (1981); U.S. Dep't of Army, Pamphlet No. 27–2, Analysis of Contents: Manual for Courts-Martial, United States, 1969, Revised Edition, at 27–11 (1970); *United States v. Pruitt,* 48 C.M.R. 495, 498 (A.F.C.M.R.1974). The parties have noted, but disagree as to the effect of, the subsequent decision in *United States v. Lewis,* 12 M.J. 205 (C.M.A.1982), in which the court, although dealing expressly with a prosecution for making a disrespectful reply rather than a false one, said

> The consideration of a 'statement', apart from the truth of its words, is like the situation when a witness who, though having the right to assert the privilege against self-incrimination chooses instead to testify falsely. Whether or not his unwarned testimony—had it been truthful—would have been admissible against him in a trial for some other crime, his false testimony will support a conviction for perjury, an offense entirely separate

from that upon which he had been testifying. *See United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). [Footnote omitted.]

*Id.* at 208. While this seems to us the preferable rule, we will not rest our decision solely on the premise that *Price,* and paragraph 140*a* (6) of the Manual for Courts-Martial or Military Rule of Evidence 304(a), have been overturned sub silentio.

■ The requirement of Article 31(b) for warning a suspect prior to requesting his statement applies in Article 32 investigations as well as in police investigations. *United States v. Williams,* 9 M.J. 831 (A.C. M.R.1980). Of course, as we have seen, the testimony alleged in this case to have been perjurious was given after a proper warning. However, the appellant gave the same testimony earlier without having been warned. If he should have been warned on that occasion, a stricter test may apply to the admissibility of the second statement. *Cf. United States v. Seay,* 1 M.J. 201, 203–04 (C.M.A.1975). We note, however, that, although the advice given appellant on his second appearance in the hearing did not include notice that his earlier statement could not be used against him, it did include advice that he was now suspected of having testified falsely. His decision to reiterate the false testimony was, therefore, a conscious one.

■ The warning requirement of Article 31(b) applies not only when the interrogator actually suspects that the person being questioned has committed an offense, but is triggered as well when the totality of circumstances are such that the questioner reasonably should have harbored that suspicion. *United States v. Morris,* 13 M.J. 297, 298 (C.M.A.1982); *United States v. Wilson,* 7 M.J. 997, 1001 (A.C.M.R.), *pet. denied,* 8 M.J. 181 (C.M.A.1979). This question was litigated at appellant's trial. The Article 32 investigating officer testified, credibly we find, that he did not in fact suspect appellant of an offense at the time of his initial testimony in the Article 32 investigation. The defense counsel argued that the Article

32 investigating officer reasonably should have suspected appellant of being involved in the assault on Payton because he possessed three forms indicating that police investigators had warned appellant he was a suspect before seeking statements from him and further possessed the two sergeants' statements to the effect that appellant had admitted to them having been involved in a fight near the 1–2–3 Club on the weekend in question.

The military judge denied the motion to suppress appellant's testimony, saying that he was convinced that the Article 32 investigating officer did not suspect appellant of any involvement in the offenses (until after he had testified the first time). The judge's ruling further implied that the totality of circumstances was not such as to reasonably require that the investigating officer consider the appellant a suspect since those circumstances included the fact that the officer was not trained as an investigator, had not conducted an Article 32 investigation before, and was primarily concerned with determining the involvement of Houck.

We believe that the military judge ruled correctly. The mere existence of some circumstances that would suggest to the suspicious mind that a witness to an investigation might have been involved in the very offense under investigation does not trigger the rights warning requirement of Article 31(b). *Cf. United States v. Schafer,* 13 U.S.C.M.A. 83, 87–88, 32 C.M.R. 83, 87–88 (1962).

Even if the military police investigator and a criminal investigation agent had advised appellant that he was a suspect in an assault and attempted robbery before taking his statements, the fact remains that, waiving his right to silence and to legal advice, he made statements which gave no clue of his own involvement and were only later discovered to be false. Indeed, the thrust of the investigators' questions to appellant concerned Houck's involvement, not his own. The advice given to him on one occasion that he was suspected of "false swearing" apparently was intended to convey to him the suspicion that he was lying for Houck, not for himself. Nor were the statements of the sergeants indicating that appellant admitted to them he had intervened in a fight between Houck and two trainees near the club over the weekend necessarily inconsistent with his statements that Houck was in his barracks room throughout Saturday evening.

The early testimony during the Article 32 investigation did not implicate appellant; indeed, Payton testified in effect that in the witness' waiting room, where appellant evidently was believed to be, there was no one he recognized.

Although the test we apply is said to be an objective one, to the extent that the military judge's ruling took into account the subjective qualifications and experience of the particular investigating officer (who, we have observed, appears not to have been provided with legal counsel at the hearing), that comports with the tendency demonstrated by the Court of Military Appeals in its own opinions. *United States v. Leiffer,* 13 M.J. 337, 343 (C.M.A.1982). When, as happens during trials, testimony that appellant was involved was placed on the record, he was at that time properly warned in accordance with Article 31(b). We are satisfied that the military judge correctly ruled that there was no requirement for an earlier warning.

On that basis, the military judge properly admitted the transcript of appellant's perjurious testimony into evidence.

The findings of guilty and the sentence are affirmed.

Judge CLAUSE and Judge COHEN concur.