**UNITED STATES, Appellee,**

v.

**Private E1 Archie E. BLOCKER,
294–52–5331, United States
Army, Appellant.**

**ACMR 8801260.**

U.S. Army Court of Military Review.

29 June 1990.

---

For Appellant: Jerry M. Cullen, Esquire (argued), Stephen G. Mirakian, Esquire, Captain Ralph L. Gonzalez, JAGC (on brief).

For Appellee: Captain Timothy W. Lucas, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC (on brief).

Before FOREMAN, SMITH and VARO, Appellate Military Judges.

OPINION OF THE COURT

FOREMAN, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of rape, aggravated assault, assault consummated by a battery, sodomy, and housebreaking, in violation of

Articles 120, 128, 125, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928, 925, and 930 (1982). The approved sentence provides for a dishonorable discharge, confinement for thirty-five years and forfeiture of all pay and allowances.

On the night of 27–28 February 1988, a Korean woman was abducted and sexually assaulted outside a noncommissioned officers' club near Garlstedt, Federal Republic of Germany. The victim described her assailant as a black male, between five and a half and six feet tall, medium build, with a receding hair line, wearing a dark leather jacket and dark pants. The victim stated that she had scratched her assailant on the neck. The appellant was one of 30–40 soldiers who had remained behind in the rear detachment while their unit was engaged in field training. He and another soldier were scheduled to depart Germany on 1 March 1988. The rear detachment commander concluded that the military police might want to question the two soldiers because both were black and had been in the rear area on the night of the assault, and because the appellant was being discharged for sexual offenses. A military police investigator, Staff Sergeant (SSG) Gadd, was sent to interview and photograph the two soldiers. He was instructed to determine if the two soldiers had any information regarding the assault and to photograph them in preparation for a photographic line-up. SSG Gadd did not advise the appellant of his rights as a "suspect." He asked the appellant if he had been at the noncommissioned officers' club on Sunday night and if he had seen an incident involving a Korean woman. The appellant corrected SSG Gadd by saying, "You mean Saturday night." The appellant told SSG Gadd that he had witnessed an argument between a Korean woman and a black woman. SSG Gadd then asked the appellant to show him his upper extremities for scratches. The appellant consented and showed SSG Gadd five scratches on the side of his neck. SSG Gadd then stopped the interview and stated that he had to make a telephone call, at which time the appellant commented, "I guess I won't be going anywhere." SSG Gadd asked the appellant what he had said, and the appellant responded, "It could have been the black lady that assaulted the Korean lady." SSG Gadd terminated the interview. Subsequently, the appellant's quarters were searched and clothing similar to that described by the victim was found. The appellant was charged with the assault on the Korean woman. Evidence of the appellant's comments to SSG Gadd was admitted, over defense objection, at his court-martial.

On 8 February 1988, prior to the assault in question, the appellant, then serving as a staff sergeant, had appeared before an administrative discharge board, convened to determine whether he should be discharged for misconduct.[1] The board recommended that the appellant be discharged under other than honorable conditions, and the appointing authority approved the board's recommendation on 20 February 1988. The misconduct considered by the administrative discharge board included two of the three sexual assaults for which the appellant was later tried by general court-martial on 6 and 8 June 1988. Pending this court-martial, the appellant's approved discharge was held in abeyance. However, because appellant's discharge had been approved, he had been administratively reduced to the grade of Private E1 pursuant to Army Regulations.[2]

The appellant appeared at his court-martial in the uniform of a Private E1, without

---

1. The board was convened under the provisions of Army Reg. 635–200, Enlisted Personnel: Separation for Misconduct, Chap. 14 (20 July 1984)[hereinafter AR 635–200].

2. Army Reg. 635–200, para. 1–14, provides that, "When a soldier is to be discharged under other than honorable conditions, the separation authority will direct an immediate reduction to the lowest enlisted grade per AR 600–200, chap. 6, section IV." Army Reg. 600–200, Enlisted Personnel Management System: Personnel—General, para. 6–11, provides that, "When the separation authority determines that a soldier is to be discharged from the service under other than honorable conditions, he or she will be reduced to the lowest enlisted grade.... The commander having separation authority will, when directing discharge under other than honorable conditions ... direct the soldier to be reduced to Private E1."

objection. The charge sheet reflected his military grade as Private E1. After the military judge announced his findings and the data from the charge sheet were read, the military judge asked whether the appellant was really a Private E1. Neither the trial counsel nor the trial defense counsel was able to answer definitively. Without resolving the issue, the military judge moved to consideration of the evidence on sentencing. After the trial counsel completed his presentation, the military judge advised the appellant of his allocution rights, addressing him as "Sergeant Blocker."

Immediately before the military judge announced the sentence, the trial defense counsel raised the issue of the appellant's military rank and argued that the appellant was a staff sergeant, not a Private E1. The military judge heard argument from both sides and then announced:

Well, it seems to me that's a matter that should be resolved by someone other than this court. I have no authority over that.

Private/Sergeant—whichever—if you have been improperly before the court in improper rank, the court apologizes for that.

You can be aware that I have held nothing against you in the sense of any adverse inference from the fact of that, but I just want to make sure that someone along the line makes sure that things were done right, and that would be reflected on the charge sheet. And is that on the charge sheet, which I have to make sure is accurate.

The military judge then announced the sentence, addressing the appellant as "Private E1 Archie E. Blocker."

The appellant contends that the government had a duty to set aside his administrative reduction prior to his court-martial, that his court-martial for offenses considered by the administrative board constituted double jeopardy, that forcing him to appear in the uniform of a private instead of a staff sergeant "unreasonably burdened [his] choice of forum," and that his

counsel were ineffective because of their "failure to investigate, research and object to the government's failure to restore his prior grade of E-5 (sic) prior to the court-martial." The appellant also contends that his remarks to SSG Gadd were erroneously admitted in evidence.

Prior to the effective date of the Rules for Courts–Martial, the burden was on the government to ensure that an accused appeared before the court-martial in the correct uniform. Manual for Courts–Martial, United States, 1969 (Rev. ed.), paragraph 60. In the 1984 Manual that burden shifted to the accused and his counsel. The accused's commander is now required to lend reasonable assistance to an accused upon request, but the primary responsibility for ensuring that an accused appears in the correct uniform rests with the accused and his counsel. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 804(c)(1)[hereinafter R.C.M.].

■ The right of an accused to appear in the correct uniform, with insignia of rank and authorized decorations and badges, is based on the presumption of innocence. *Kennedy v. Cardwell,* 487 F.2d 101 (6th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). An accused is entitled to appear in court as a responsible member of the military community, not a convicted criminal. Compelling an accused to appear in an improper uniform deprives him of due process and may result in reversal of a conviction if there is a reasonable likelihood of prejudice. *United States v. Scoles,* 33 C.M.R. 229 (C.M.A.1963); *United States v. West,* 31 C.M.R. 256 (C.M.A.1962).

Although Army regulations require the separation authority to direct reduction to the correct enlisted grade when a soldier is pending discharge under other than honorable conditions,[3] the separation authority did not expressly direct the appellant to be reduced to Private E1; instead he merely referred to the appellant as a Private E1 in his action directing the appellant's discharge. The appellant's personnel records

3. *See* note 2, *supra.*

were subsequently annotated to reflect reduction to Private E1 on 20 February 1988, the date of the separation authority's action. We find that the appellant was reduced to Private E1 on 20 February 1988.

The purpose of the army regulations is to ensure that a soldier pending administrative discharge under other than honorable conditions does not enjoy the status, authority or respect associated with military rank. The purpose of those regulations is no longer served when the soldier is no longer being processed for discharge, but is being held for trial by court-martial. However, the regulations contain no authority to restore the soldier's former rank and grade once the discharge is approved.

In this case the appellant did not request that his former military rank be restored prior to his court-martial, nor did he object to appearing before the court-martial in the uniform of a private instead of a staff sergeant. Moreover, we find no evidence of sinister design, evil motive or bad faith on the part of the government in this case.

■ The appellant's administrative discharge proceeding and resultant reduction raises two issues: (1) whether the appellant's trial for some of the offenses already considered by his discharge board constitutes double jeopardy and (2) whether it deprived him of due process. The constitutional prohibition against double jeopardy applies only to successive trials by judicial tribunals for the same acts. *United States v. Fretwell*, 29 C.M.R. 193 (C.M.A.1960); *see* R.C.M. 907(b)(1)(C). Administrative discharge proceedings do not bar trial by court-martial for the same misconduct. *United States v. Williams*, 12 M.J. 1038 (A.C.M.R.1982). *See United States v. Pierce*, 27 M.J. 367 (C.M.A.1989)(nonjudicial punishment does not bar subsequent trial for same offense). Accordingly, we hold that the appellant's trial by court-martial for offenses previously considered by an administrative discharge board did not violate the constitutional prohibition against double jeopardy.

■ We turn next to the question whether the appellant was denied due process by being compelled to appear before the court-martial in the uniform of a private. We look first to the fairness of the appellant's trial. The issue regarding the appellant's rank did not arise until the military judge raised it during the sentencing hearing. The military judge stated on the record that he drew no adverse inferences from the appellant's rank. Since the appellant elected not to testify on the merits, his credibility as a witness was unaffected. Both trial defense counsel have stated, in affidavits ordered by this court, that the appellant's rank did not affect their advice regarding choice of forum, nor did it affect their trial tactics, including the decision of the accused not to testify.

Accordingly, even if the appellant should have been permitted to appear in the uniform of a staff sergeant, we find that he was not prejudiced by appearing before the court as a private, and hold that the issue is waived because of his failure to object. *See Estelle v. Williams*, 425 U.S. 501, 508–513, 96 S.Ct. 1691, 1695–97, 48 L.Ed.2d 126 (1976) (defendant required to appear in prison garb but error waived by failure to object); *United States v. Birdsell*, 775 F.2d 645 (5th Cir.1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1979, 90 L.Ed.2d 662 (1986) (defendant required to appear unshaven and in prison garb, but error waived by failure to object). We leave for another day the question whether the result would be different if the appellant's credibility as a witness were in issue, or if the appellant had elected a trial with members, or if enlisted members junior to the appellant's former rank heard his case.

■ Our disposition of the due process issue with regard to the fairness of appellant's trial, however, does not end our inquiry. An accused may not be punished twice for the same offense. *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989). In this case the appellant was required to serve at reduced pay from 20 February 1988, the date his administrative discharge was approved, until 8 June 1988, the date he was sentenced by a court-martial. Although both the administrative discharge board and the general court-martial considered other misconduct, both considered the same

two sexual assaults. We hold that the appellant is entitled to credit for the consequences of the administrative board proceedings arising from the same misconduct. We will adjust the portion of the sentence pertaining to forfeitures in order to give him dollar for dollar credit.[4]

Since we are satisfied that confinement and a punitive discharge would have been adjudged by the military judge and approved by the convening authority even if the appellant had been restored to his former grade prior to his trial by court-martial, we find that the appellant is not entitled to any other credit for his administrative reduction to Private E1.

In view of our holding that the appellant was not prejudiced by appearing before the military judge in the uniform of a private, the appellant's contention that his counsel were ineffective for not raising the issue is likewise without merit. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 Regarding the appellant's ambiguous comments to SSG Gadd, we hold that the appellant was not a suspect, because the scope of the investigation had not yet narrowed to the point where the appellant was anything more than a potential witness. *See United States v. Ravenel*, 26 M.J. 344 (C.M.A.1988)(totality of circumstances determines whether witness is a suspect); *United States v. Briley*, 26 M.J. 977, 978 (A.F.C.M.R.1988)(co-occupant of residence where cocaine allegedly used was not a suspect); *United States v. Poole*, 15 M.J. 883 (A.C.M.R.1983)(mere existence of circumstances that would suggest to the suspicious mind that a witness might have been involved in offense does not require rights warning). Accordingly, we hold that the military judge did not err by admitting the appellant's comments to SSG Gadd. Assuming, *arguendo*, that the remarks

were inadmissible, we are also satisfied that they were so ambiguous as to have no impact on the findings.

We have considered the remaining assignments of error, including those personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find that they are without merit.

The findings of guilty are affirmed. In order to ensure that the appellant receives full credit for his administrative reduction to Private E1, the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for thirty-five years, reduction to Private E1, and forfeiture of $469.00 dollars pay per month for six months and forfeiture of all pay and allowances thereafter.

Judge SMITH and Judge VARO concur.

---

4. The appellant's pay as a private was $671; his pay as a staff sergeant would have been $1291. As a married private his basic allowance for quarters (BAQ) was $258; as a staff sergeant it would have been $366. For the three months and 19 days he served at the lower grade, he is entitled to $2760 credit, $2368 for lost pay and $392 for lost BAQ. By reducing the total forfei-

tures to forfeiture of $469 pay per month for six months and total forfeitures thereafter, the appellant's entitlement to $202 basic pay and $258 basic allowance for quarters (at 1988 rates) will be restored for six months, entitling him to $2760, the amount his pay and allowances were reduced by the administrative reduction prior to his court-martial.