# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, HAIGHT, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class HENRY C. HOEFT, IV**
**United States Army, Appellant**

ARMY 20140827

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Lieutenant Colonel Runo C. Richardson, Acting Staff Judge Advocate

For Appellant: Major Amy E. Nieman, JA; Captain Brian D. Andes, JA (on brief); Lieutenant Colonel Jonathan F. Potter, JA; Major Amy E. Nieman, JA Captain Brian D. Andes, JA (on brief on specified issue).

For Appellee:  Colonel John P. Carrell, JA; Major A.G. Courie, III, JA; Major John K. Choike, JA; Captain Scott L. Goble, JA (on brief on specified issue).

13 August 2015

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOK, Senior Judge:

A military judge sitting as a special court-martial convicted appellant, consistent with his pleas, of making a false statement, larceny of military property of a value of more than $500, and wearing unauthorized insignia, in violation of Articles 107, 121, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 907, 921, 934.[1]  The military judge sentenced appellant to a bad-conduct discharge, confinement for five months, and reduction to the grade E-1.  The convening authority approved the adjudged sentence.

---

[1] A specification and charge alleging appellant engaged in a conspiracy to commit larceny and a specification alleging appellant solicited another soldier to commit an offense were dismissed at trial.

Appellant's case is now pending review before this court pursuant to Article 66, UCMJ. Appellant originally submitted the case on its merits. However, on 30 March 2015, we specified the following issue:

> IS THERE A SUFFICIENT BASIS TO CONCLUDE THE STATEMENT USED TO CONVICT APPELLANT OF MAKING A FALSE OFFICIAL STATEMENT WAS MADE IN RESPONSE TO QUESTIONS POSED BY HIS COMPANY FIRST SERGEANT WITHOUT RECEIVING REQUIRED ARTICLE 31(B) WARNINGS? IF SO, DOES THIS CONCLUSION CREATE A SUBSTANTIAL BASIS IN LAW OR FACT TO QUESTION THE PROVIDENCE OF APPELLANT'S GUILTY PLEA TO THE ARTICLE 107, UCMJ, CHARGE AND SPECIFICATION? SEE *UNITED STATES V. SWIFT*, 53 M.J. 439 (2000).

We have now received briefs from both parties and find the above captioned issue merits both discussion and relief.

## BACKGROUND

Appellant and Private E2 (PV2) Evan Musgrove were assigned as arms room guards when military property from that area went missing. Suspecting appellant and PV2 Musgrove had a role in the property's disappearance, First Sergeant (1SG) RC, appellant's and PV2 Musgrove's first sergeant, ordered the two soldiers into his office. Once the two soldiers arrived, 1SG RC, without informing appellant of his rights,[2] questioned both about the whereabouts of the missing property. Both soldiers denied knowing where the property was. This denial led to both soldiers being charged with making a false official statement, because both had played a role in the property's disappearance and subsequent concealment and were, therefore, well aware of its current location. Although 1SG RC did not read appellant his

---

[2] There is no evidence in the record that 1SG RC informed appellant of his right against self-incrimination under Article 31(b), UCMJ before questioning began. In its brief, government counsel concedes that "given the facts that are reflected in the record, [this] court could reasonably conclude that a rights warning was not given." In addition, we take judicial notice that in the companion case of *United States v. Musgrove*, ARMY 20140777 (Army Ct. Crim. App. 10 Aug. 2015) (summ. disp.), we determined that 1SG RC did not inform PV2 Musgrove of his Article 31(b) rights before questioning him. Both PV2 Musgrove and appellant were questioned at the same time and in the same place, 1SG RC's office. Based on the foregoing, we find that 1SG RC did not inform appellant of his Article 31(b), rights before questioning him concerning the missing property.

Article 31(b) rights prior to questioning him, he did offer both soldiers "amnesty" if the missing property was returned.

During the providence inquiry, the military judge failed to recognize that 1SG RC violated appellant's Article 31(b) rights and that appellant could therefore have potentially suppressed this statement. This issue is also not mentioned in either the stipulation of fact or the pretrial agreement. The pretrial agreement also does not include an offer by appellant to waive any motions.

## LAW AND DISCUSSION

### 1. Article 31, UCMJ

Article 31(a), UCMJ, prohibits persons subject to the UCMJ from compelling any person to incriminate themselves. To guard against this scenario, Article 31(b), implements a privilege against self-incrimination by requiring soldiers to be informed of certain rights before they are questioned. Specifically, no person subject to the UCMJ may:

> [I]nterrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

UCMJ art. 31(b).

In the case before us, it is clear: (1) when 1SG RC questioned appellant, he was a person subject to the code; (2) at the time 1SG RC questioned appellant he suspected appellant of an offense; and (3) 1SG RC failed to inform appellant of his rights under Article 31(b) before questioning him. In addition, our superior court in *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000), further held that the person conducting the questioning must be participating in an official law enforcement or disciplinary investigation or inquiry.

In regards to this latter requirement, it is equally clear 1SG RC was conducting a disciplinary investigation or inquiry at the time he questioned appellant. This is not only supported by the presumption identified in *Swift* that questioning by a military superior in the "chain of command" is part of a "disciplinary" investigation, but further buttressed by 1SG RC's offer of "amnesty" in exchange for the property's return. *Id*. As such, we find 1SG RC violated

3

appellant's rights under Article 31, UCMJ, through the aforementioned interrogation.[3]

Article 31(d), UCMJ generally proscribes the use of a statement obtained in violation of Article 31:

> No statement obtained from any person in violation of this article . . . may be received in evidence against him in a trial by court-martial.

### 2. *Waiver and Forfeiture*

Our analysis, however, does not end with finding a violation of appellant's rights. To the contrary, we must now examine whether waiver applies. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted). "When . . . an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *Id*. (citation omitted). In addition, Rule for Courts-Martial 910(j) states that "a plea of guilty which results in a finding of guilty waives any objection . . . insofar as the objection relates to the factual issue of guilt of the offense(s) to which the plea was made." Military Rule of Evidence 304(d)(5) also addresses the concept of waiver, specifically stating "a plea of guilty waives all privileges against self-incrimination and all motions and objections under this rule with respect to that offense . . . ." Government counsel argues, in part, that we should apply waiver in the instant case and affirm appellant's conviction.

The concept of "forfeiture," on the other hand, refers to scenarios where an appellant fails to timely assert a right. *Gladue*, 67 M.J. at 313. In those situations, we review for plain error. *Id*.

Government counsel urges us to follow our sister court's holding in *United States v. Williams*, NMCCA 200400576, 2006 CCA LEXIS 34 (N.M. Ct. Crim. App. 16 Feb. 2006) (unpublished). Although similar to appellant's case, the issue being challenged in that case was whether the military judge had abused his discretion in accepting Williams' guilty plea to making a false statement because he failed to determine whether Williams had been advised of his Article 31, UCMJ rights prior to being questioned. *Id*. at *6. In the instant case, we have definitively concluded that appellant was not informed of his Article 31 rights before he made the statement that formed the basis of his false official statement charge.

---

[3] We need not address whether the offered "amnesty" would have been valid and binding if appellant and his cohort had come clean when provided the opportunity.

In further evaluating the issue before us, we find *Swift* to be particularly illuminating. In that case, our superior court found that "[m]ore than 40 years have passed since we observed in *Price*[4] that the express language of Article 31 did not permit a false official statement prosecution to be based upon an unwarned statement." 53 M.J. at 448. Although our superior court noted that unwarned statements, pursuant to Military Rule of Evidence 304(b), can be used "for purposes of impeachment or otherwise to prove [appellant] testified falsely at trial," the court ultimately refused to allow the admission of an unwarned statement to support a false statement prosecution unless appellant had "opened the door."

Based on our review of the record, there is no evidence appellant received any guidance from either his own counsel or the military judge that 1SG RC had violated appellant's Article 31(b) rights and he therefore had the ability to suppress his unwarned statement to 1SG RC. In applying waiver in the companion case of *Musgrove*, ARMY 20140777, of which we have taken judicial notice, the military judge identified this issue, reviewed it with PV2 Musgrove, and then established that PV2 Musgrove was affirmatively waiving this right in exchange for a sentence limitation in his pretrial agreement. In appellant's case, this issue goes unaddressed in the stipulation of fact, the pretrial agreement, and the providence inquiry. Under the circumstances of this case, we decline to find waiver or enforce forfeiture.

### 3. Abuse of Discretion

The ultimate issue therefore becomes whether the military judge abused his discretion in accepting appellant's guilty plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). During a guilty plea inquiry, the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *Id*. at 321–22 (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008). We review a military judge's decision to accept a plea for an abuse of discretion by determining whether the record as a whole shows a substantial basis in law or fact for questioning the guilty plea. *Inabinette*, 66 M.J. at 322.

In finding the military judge abused his discretion in appellant's case, we are struck by the rather obvious nature of the issue at hand. Both the stipulation of fact and appellant during the providence inquiry made it clear that 1SG RC was more interested in the return of the property rather than punishing appellant, and was therefore offering "amnesty" in exchange for the property's return. The use of the word "amnesty" in this context should have served as a red flag for what then

---

[4] *United States v. Price*, 7 U.S.C.M.A. 590, 23 C.M.R. 54 (1957).

actually happened: 1SG RC questioned appellant and PV2 Musgrove without reading them their Article 31(b) rights because he had already offered them *de facto* immunity from prosecution. In addition, the ability of a different military judge to spot this very issue when presented the same scenario supports our finding that this issue should have been identified in appellant's case. We also note the absolute nature of our superior court's holding in *Swift*, specifically the inability of a prosecution for false statement to be based upon an unwarned statement. 53 M.J. at 448.

We therefore hold the military judge abused his discretion in accepting appellant's guilty plea to the Specification of Charge IV and Charge IV by not reviewing with appellant his ability to suppress his unwarned statement to 1SG RC and the resultant inability of the government to successfully prosecute him for making a false statement.

## CONCLUSION

The findings of guilty of the Specification of Charge IV and Charge IV are set aside and that specification and charge are DISMISSED.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence. Second, the gravamen of appellant's misconduct remains the same. In addition, appellant was sentenced by a military judge and based on our experience we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, the approved sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

6

Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court